UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM THOMPSON, | : | Case No. 3:12-cv-287 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BOARD OF EDUCATION, DAYTON | : | |
| CITY SCHOOL DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This civil action is before the Court on Defendants' motion for summary judgment (Doc. 10)[1] and the parties' responsive memoranda (Docs. 17, 18).

### I.  BACKGROUND FACTS

Plaintiff maintains that the Defendants discriminated against him because of his age, when they failed to hire him for a carpenter journeyman position in 2011. Plaintiff claims that he was better qualified than the two individuals who were hired at that time. Defendants argue that they refused to hire Plaintiff for legitimate business reasons having nothing to do with his age.

### II. UNDISPUTED FACTS[2]

1. William Thompson took the City of Dayton Civil Service test on October 26, 2009.  (Doc. 16 at 35-38, Ex. V).

---

[1] Defendants include Dayton City School District Board of Education and Dayton City Public School District (collectively "the District").

[2] *See* Doc. 10, Ex. 2 and Doc. 17, Ex. 1.

2. William Thompson's exam score was enhanced by 20% due to his prior military service.  (Doc. 16 at 35-38, Ex. A).

3. William Thompson's exam score placed him fourth on the City of Dayton's November 13, 2009 Open Competitive Eligible List for carpenters.  (Doc. 16 at 35-38, Ex. A).

4. On November 30, 2010, the District posted a notice of opening for a first shift carpenter journeyman in its maintenance department.  (Doc. 12 at 31-33, Ex. B).

5. The Civil Service Commission determines individuals' rankings on the open competitive list.  (Doc. 16 at 39).

6. Joanna Wilson is the District's Executive Director of Facilities and Operations.  (Doc. 12 at 19).

7. Rick Rayford is the District's Maintenance Manager and Carpenter Foreman.  (Doc. 13 at 4-5).

8. Wilson and Rayford conducted interviews of three individuals on December 15, 2010.  (Doc. 12 at 19-20, 28-31, 48-49; Doc. 13 at 4, 18).

9. The successful applicants would be required to perform carpentry duties and preventative maintenance throughout the District's buildings.  (Doc. 12, Ex. B; Doc. 16, Ex. V).

10. The successful applicants would also have to "work well on teams and lead others."  (Doc. 12, Ex. B; Doc. 16, Ex. V).

11. The District's human resources department scheduled Dwight Taulbee, William Thompson, and Brett Barnes as candidates for carpenter journeymen interviews based upon their placement on the open competitive list.  (Doc. 12 at 38, 48, Exs. A and E).

12. Taulbee, Thompson, and Barnes ranked third, fourth, and fifth on the November 13, 2009 Open Competitive Eligible List, respectively.  (Doc. 11 at 38, 48, Exs. A and E).

13. The individuals ranked first, second, and third on the November 13, 2009 Open Competitive Eligible List were Michael Keyer, Timothy Buxton, and Dwight Taulbee, respectively.  (Doc. 12 at 61-62).

14. Keyer, Buxton, and Taulbee were interviewed for an open carpenter position in early 2010 pursuant to the Civil Service "Rule of Three."  (Doc. 12 at 61-62).

15. The second person on the list, Timothy Buxton, was chosen to fill the carpenter position that was open in March of 2010.  (Doc. 12 at 25-26).

16. The higher ranked employee on the Open Competitive Eligible List will not necessarily be hired for an open position.  (Doc. 16 at 32-33).

17. Wilson and Rayford interviewed Dwight Taulbee, William Thompson, and Brett Barnes on December 15, 2010.  (Doc. 12 at 28-31, 39-48, 50-53, 54-59; Doc. 13 at 8-17).

18. Wilson and Rayford took notes during the interviews on sheets prepared by the District's human resources department.  (Doc. 12 at 28-31, 39-48, 50-53, 54-59, Exs. D, I, and L; Doc. 13 at 8-17, Exs. M and N).

19. The sheets prepared by the human resources department listed questions for Wilson and Rayford to ask Taulbee, Thompson, and Barnes.  (Doc. 12 at 28-31, 39-48, 50-53, 54-59, Exs. D, I, and L; Doc. 13 at 8-17, Exs. M and N).

20. Wilson and Rayford recommended that Dwight Taulbee and Brett Barnes be hired for the two open carpenter positions.  (Doc. 13 at 18; Doc. 16 at 40-42).

21. Ed Sweetnich, then Executive Director of Human Resources for the District, accepted their recommendation.  (Doc. 12 at 63).

22. The District hired Dwight Taulbee as a carpenter journeyman effective January 21, 2011.  (Doc. 14 at 6-7, Ex. Q).

23. Taulbee, born in 1961, was 49 years old when the District hired him.  (Doc. 10, Ex. 1 at 6).

24. The District also hired Brett Barnes as a carpenter journeyman that same day.  (Doc. 15 at 6, Ex. O).

25. Barnes, born in 1969, was 41 years old on his hire date.  (Doc. 10, Ex. 1 at 6).

26. William Thompson was not hired.  (Doc. 16 at 40-41).

27. The interview questions were all specifically job-related and none of them were related to age.  (Doc. 16 at 9-11, 29, 30, 32).

28. Rayford noted that Taulbee "tries to get along with everybody."  (Doc. 13 at 16-17, 19, Ex. N).

29. During the interview with Brett Barnes, Wilson noted that Barnes was outgoing and laid back.  (Doc. 12 at 43-44, Ex. D).

30. During the interview with Brett Barnes, Wilson noted that Barnes gets along well with others and was friendly.  (Doc. 12 at 43-44, Ex. D).

31. Wilson summarized Thompson's interview answers as follows: "He would have – he knew everything. He had no weaknesses. He was an expert in everything. He would go out to buildings and if a staff member, principal, teacher disagreed with the work he was doing, he would tell them they were wrong."  (Doc. 12 at 30, Ex. L).[3]

32. Wilson's interview notes reflect that Thompson's answer to how he would deal with "a difficult customer" was: "Know you're right. Be professional. Keep a poker face. Be nice telling people they're wrong."  (Doc. 12 at 58-59, Ex. L).

33.  Rayford's interview notes from Thompson's interview about the "difficult customer" question state: "no that your in the right even if they are."  (Doc. 13, Ex. M).

34. Rayford noted in the same area as his notes for Thompson's "difficult customer" response: "Can't work that way!"  (Doc. 13, Ex. M).

35. Ed Sweetnich, then Executive Director of Human Resources for the District, told Thompson that he was not hired due to his interview answers.  (Doc. 16 at 40-41).

---

[3] During the interview, Ms. Wilson stated that many of Defendants' administrators can get pushy. (Doc. 17, Ex. 2 at ¶ 9).  When asked how Thompson would deal with these administrators if they requested additional work, Plaintiff stated that he would keep a poker face, not get caught up in the emotion, make sure that he was not wrong on the work performed, and tell them that he was not authorized to do additional work. (*Id.*)

36. Sweetnich called Thompson again later and stated that he had not been hired due to the interviewers' perception that Thompson lacked the ability to "communicate, network and be a team player." (Doc. 16 at 42-44, 46, Ex. T).

37. On June 14, 2011, William Thompson filed a Charge of Discrimination against Dayton Public Schools, alleging that he was not hired because of his age. (Doc. 16 at 9, Ex. S).

38. The Ohio Civil Rights Commission ("OCRC") determined that no probable cause of discrimination existed in the matter. (Doc. 16 at 11-12).

39. Thompson appealed the Regional Office's determination to the State Commission, which also determined there was no probable cause of discrimination. (Doc. 16 at 11-12).

40. The Equal Employment Opportunity Commission adopted the OCRC's findings and dismissed Thompson's dual-filed Charge on June 24, 2012. (Doc. 1, Ex. B).

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

#### A. *Sui Juris*

Plaintiff filed suit against two defendants: the Board of Education of the Dayton City School District and the Dayton City School District Dayton Public Schools. Only the Board of Education is a properly-named party to this litigation, since the Board of Education is the body corporate capable of suing and being sued. *Y.S. v. Bd. of Educ. of Matthews Local Sch. Dist.*, 766 F. Supp. 2d 839, 841-42 (N.D. Ohio 2011). "The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued[.]" Ohio Rev. Code § 3313.17. A school district is not *sui juris*, rather it is the board of education which must be sued. *Eppley v. Tri-Valley Local School Dist.*, No. CT 2007-0022, 2008 Ohio App. LEXIS 27, at *20 (Ohio App. Jan. 3, 2008), *rev'd on other grounds*, 908 N.E.2d 401 (Ohio 2009). Since the Dayton City Public School District is not *sui juris* or an entity capable of being sued, it is entitled to summary judgment.

#### B. **Age Discrimination**

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from failing to hire, discharging or discriminating against an individual with respect to her or his compensation or terms, conditions or privileges of employment because of his

age. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Id.* Direct evidence is evidence which, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor. If a plaintiff does not have direct evidence of age discrimination, the age discrimination claim is analyzed using the *McDonnell Douglas* burden-shifting framework. *Id.*

The first step of the *McDonnell Douglas* burden-shifting framework is that the plaintiff must establish a *prima facie* case of discrimination. In order to make a *prima facie* case, the plaintiff must show the following elements: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002). In the case of age discrimination, the "protected group" is persons over the age of 40. 29 U.S.C. § 631 (2006).

One option for the fourth element of a *prima facie* case of age discrimination is to show that the plaintiff was replaced by a substantially younger person. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008). The other option for the fourth element of a *prima facie* case of age discrimination is to show that the plaintiff was treated differently than similarly-situated, non-protected employees. *Id*.

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reasons for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the

employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.* Nevertheless, the overall burden of persuasion remains with the plaintiff at all times. *Id.*

### *1. Prima facie case*

#### a. Protected Class

Defendant does not dispute that Plaintiff is a member of the protected class. Plaintiff was 60 years old at the time he was denied the position of carpenter journeyman. (Doc. 12, Exs. F, J).

#### b. Adverse Employment Action

Defendant does not dispute that it did not hire Plaintiff. Accordingly, Plaintiff was subjected to an adverse employment action when Defendant refused to hire him for the position of carpenter journeyman.

#### c. Qualified for the Position

Plaintiff completed a union carpenter apprenticeship program and advanced from an apprentice to a carpenter journeyman and worked as a carpenter for over 30 years. (Doc. 16 at 78, Ex. T). He worked for several companies on commercial and residential projects which provided him the opportunity to perform tasks in every area of the carpentry trade. (*Id.*) In his most recent position prior to seeking employment with Defendant, Plaintiff served as lead carpenter/project manager for a luxury home builder. In that position he coordinated the activities of architects, clients, suppliers, vendors,

designers, decorators, and building inspectors, led work crews, performed carpentry duties, and served as a troubleshooter. (*Id.*) While the District does not contest that Plaintiff's carpenter experience deemed him qualified for the position, his demeanor and attitude displayed in his interview rendered him ill-suited and unqualified for the position which required him to regularly interact with his fellow carpenters, other District employees, and students.

Included in the requisite knowledge and abilities of the first shift carpenter journeyman is the "ability to work well on teams and lead others." (Doc. 12, Ex. B; Doc. 16, Ex. V-1). Ms. Wilson specifically assessed the candidates' fit and ability to work with others during the interviews. (Doc. 12 at 38). Mr. Rayford was similarly looking for a team approach. (Doc. 13 at 13). Both Wilson and Rayford determined that Plaintiff lacked this qualification. Wilson determined that Plaintiff was a know-it-all who did not possess the skills necessary to deal with others, including administrators and staff where he would be working. (Doc. 12 at 30, 58-59, Ex. L). Specifically, Wilson stated that Plaintiff was not chosen because "[h]e was not a good fit for the carpenter shop." (*Id.* at 30). She explained: "He would have – he knew everything. He had no weaknesses. He was an expert in everything. He would go out to buildings and if a staff member, principal, teacher disagreed with the work he was doing, he would tell them they were wrong." (*Id.*) Plaintiff allegedly revealed during his interview that he was "a one man show" which Rayford found to be contrary to the attitude required in a carpenter for the District. (Doc. 13 at 13-14, Ex. M).

9

Plaintiff argues that at no time during the interview was he asked about his ability to work in groups or to lead groups. (Doc. 17, Ex. 2 at ¶¶ 6, 7). Plaintiff alleges that he was asked if he preferred to work alone or in groups and he indicated that he has always worked in both settings. (Doc. 17, Ex. 2 at ¶ 5; Doc. 12, Ex. L). Plaintiff maintains that he never described himself as a "one man show" or indicated that he did not like to work in groups. (Doc. 17, Ex. 2 at ¶ 8). Moreover, Rayford concluded that Plaintiff's lead carpenter experience was a great strength (Doc. 13 at 13), and Wilsons' notes reveal that Plaintiff described himself as "[e]asy going, good communicator, likes to stay busy" (Doc. 12, Ex. L). Plaintiff claims that when asked how he would deal with pushy administrators if they requested additional work, Plaintiff stated that he would keep a poker face, not get caught up in the emotion, make sure that he was not wrong on the work performed and tell them that he was not authorized to do additional work. (Doc. 17, Ex. 2 at ¶ 9).

### d. Circumstances that support discrimination

Defendant contends that Plaintiff cannot present a *prima facie* case of age discrimination because the individuals hired for the position (Dwight Taulbee and Brett Barnes) were both over the age of 40. Taulbee, who was born in 1961, was 49 years old when the District hired him. (Doc. 10, Ex. 1 at 6). Barnes, who was born in 1969, was 41 years old on his hire date. (*Id.*) Accordingly, both individuals hired by the District were in the same protected class as Plaintiff.

10

However, of the three candidates who applied for the carpenter journeyman position, Plaintiff was the oldest at age 60. The fact that the selected candidates are substantially younger than Plaintiff is a "far more reliable indicator of age discrimination" than is the fact that the selected candidates were outside the protected age class. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The term "substantially younger" as applied to age discrimination cases defies an absolute definition and is best determined after considering the particular circumstances of each case. *Weller v. Titanium Metals Corp.*, 806 N.E.2d 154, 155 (Ohio 2004). Typically, courts consider an age difference of ten years or more to be substantial. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003). Plaintiff was eleven years older than Mr. Taulbee and nineteen years older than Mr. Barnes. Accordingly, material issues of fact preclude denial of the *prima facie* case.

Additionally, Taulbee and Barnes were not formally trained carpenter journeyman like Plaintiff. (Doc. 16 at 51; Doc. 15 at 12; Doc. 14 at 15). Aside from no formal training, Taulbee did not possess a high school diploma or GED and had a criminal record which he did not disclose on his employment application. (Doc. 12, Ex. K; Doc. 14 at 16).

Plaintiff's *prima facie* burden is not onerous, but simply raises a rebuttable presumption of discrimination. *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir. 2002). The Court finds that Plaintiff has met that burden, alleging sufficient facts to establish a *prima facie* case of age discrimination.

### 2. *Legitimate non-discriminatory reason*

The District maintains that it did not hire Plaintiff because he "was not a good fit for the carpenter shop." (Doc. 12 at 30). Neither Wilson nor Rayford, who were the decision makers in this matter, saw the candidates' online applications. (Doc. 12 at 49-50; Doc. 13 at 20). Wilson and Rayford simply interviewed the three candidates that the District's human resources department had scheduled for interviews on December 15, 2010, using identical questions in all three interviews. (Doc. 12 at 38, 48, Exs. D, I, L). Wilson and Rayford's recommendation to hire Dwight Taulbee and Brett Barnes and not Plaintiff was based on the results of the interviews they conducted.

Both Wilson and Rayford were dissatisfied by Plaintiff's interview statements about how he would handle difficult issues. Specifically, Plaintiff asserted that, when dealing with a difficult customer (the District's personnel), he would know that he was right, but be nice telling people they were wrong. (Doc. 12 at 58-59, Ex. L; Doc. 13, Ex. M). In regards to Plaintiff's response, Rayford noted: "Can't work that way!" (*Id.*) Wilson summarized Plaintiff's answers from the interview as "he knew everything." (Doc. 12 at 30). Rayford disliked Plaintiff's "one man show" approach. (Doc. 13 at 13-14). Maintenance Manager Rick Rayford was looking to hire someone he believed would fit with the personalities of the existing carpenters and employees under his supervision. (Doc. 18, Ex. 2 at ¶¶ 7, 12-14, 16). Rayford was not interested in adding another strong personality to the carpentry shop. (*Id.* at ¶ 9). He believed that positive work interactions increase worker productivity and improve morale. (*Id.* at ¶ 7).

Wilson determined that Brett Barnes was trainable and personable. (Doc. 12, Ex. D). Rayford reached the same conclusion. (Doc. 18, Ex. 2 at ¶ 12). Rayford appreciated Dwight Taulbee's bleacher certification,[4] and both Rayford and Wilson concluded that he would be a good fit for the carpenter shop. (Doc. 18, Ex. 2 at ¶ 13; Doc. 18, Ex. 1 at ¶ 9). Plaintiff was viewed as arrogant, a know-it-all, and an overly-assertive person. (Doc. 18, Ex. 1 at ¶ 10; Doc. 18, Ex. 2 at ¶ 14). Wilson and Rayford found that Plaintiff lacked the ability to communicate, network, and be a team player. (Doc. 16 at 42-44, 46, Ex. T). Both Wilson and Rayford, who were familiar with the personalities and habits of the carpenters under their supervision, determined that this simply would not work in the maintenance department, much less the carpenter shop.[5]

The Sixth Circuit has repeatedly recognized that courts afford great flexibility to employers when selecting personnel, specifically explaining, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). The intangible facts upon which Wilson and Rayford based their decision are entirely

---

[4] A "bleacher certification" allows Taulbee to perform the District's annual bleacher inspections required under Ohio's Administrative Code, instead of outsourcing the work. (Doc. 18, Ex. 2 at ¶ 13).

[5] Additionally, both Wilson and Rayford are members of the same age-protected class as Plaintiff. *Grano v. Dep't of Dev. of the City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983) (affirming a trial court's grant to summary judgment to an employer that failed to hire a female for a position based on subjective evaluation processes and stating that the legitimacy of the articulated reason is subject to particularly close scrutiny when the evaluators are not members of the protected minority).

13

legitimate. An employer's consideration of an applicant's interpersonal skills and teamwork are both legitimate. *See, e.g., Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1085 (6th Cir. 1994) (holding an employee's combative and obnoxious attitude a legitimate, nondiscriminatory reason for an employer to terminate employment); *Gregory v. Chrysler Corp.*, No. 97-4442, 1999 U.S. App. LEXIS 8025, at *12 (6th Cir. Apr. 28, 1999) (finding a plaintiff's inability to work well with others to be a legitimate, nondiscriminatory reason for the defendant to take adverse employment action).[6]

Accordingly, the District's determination that Plaintiff was simply "not a good fit" is honest, legitimate, and non-discriminatory.

### 3. *Pretext*

To overcome the legitimacy of the District's stated reason, Plaintiff must show, by a preponderance of the evidence, that the District's reasons have no basis in fact, that the proffered reason did not actually motivate the District's decision, or that the reason was insufficient to motivate the District's refusal to hire him. *Hedrick v. W.*

---

[6] *See also Smith v. Mosaica Edu., Inc.*, No. 269764, 2007 Mich App. LEXIS 632, at *13-16 (Mich. Ct. App. Mar. 6, 2007) (legitimate non-discriminatory reasons included employee's hostile attitude, low staff morale, lack of organization, failure to complete reports on time, failure to recognize own fault in problems that arise, inefficient communication, and poor leadership style).

*Reserve Core Sys. & Forum Health*, 355 F.3d 444, 460 (6th Cir. 2004).[7] Plaintiff has failed in these respects. Instead, Plaintiff focuses on his own purported qualifications but fails to rebut Wilson and Rayford's concerns about his attitude and its possible effect on the workplace. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2009) ("evidence that a rejected applicant was as qualified as or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory reason was pretextual").

Immediately upon learning that he was not selected for the carpenter position, Plaintiff contacted Ed Sweetnich to determine why he was not hired. (Doc. 16 at 40-41). Sweetnich told Plaintiff that he was not hired due to his interview answers. (*Id.*) Specifically, Sweetnich told Plaintiff he was not hired due to the interviewers' perception that Plaintiff lacked the ability to "communicate, network, and be a team player." (*Id.* at 42-44, 46, Ex. T). Plaintiff asked Sweetnich to confirm that fact with his interviewers which Sweetnich did. (*Id.* at 43-44, 46). Wilson and Rayford confirmed that Plaintiff's interview answers were the reason he was not selected. (*Id.*)

---

[7] Plaintiff may show that the legitimate non-discriminatory reason given by the employer is a pretext for discrimination by showing that the reason given: (1) has no basis in fact; (2) did not actually motivate the employer's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Clay v. United Parcel Service*, 501 F.3d 695, 704 (6th Cir. 2007). A reason cannot be a pretext for discrimination unless it is shown that the reason is both false and the discrimination was the real reason. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). An employee may not rely upon her or his *prima facie* evidence to show pretext, but must instead introduce additional evidence of dissemination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Consideration of pretext focuses on the defendant's beliefs and not on the plaintiff's own perceptions. *Scott v. Thomas & King, Inc.*, No. 3:09cv147, 2010 U.S. Dist. LEXIS 63830, at *8 (S.D. Ohio June 28, 2010).

Plaintiff provided his age on the District's online application and assumed that his interviewers had seen it. (Doc. 16 at 20-23, Ex. J). However, neither Wilson nor Rayford saw the online application or materials during the hiring and interview process. (Doc. 12 at 49-50, 52, 53; Doc. 13 at 20). Plaintiff also questioned the absence of scores on the interview sheets for the candidates. (Doc. 16 at 27-28). However, points were not tallied for any of the three candidates. (*Id*.) When asked why the scoring procedure was not used, Wilson testified that the human resources director did not believe in using scores. (Doc. 12 at 52-53). Instead, hiring recommendations were made through discussion and consensus. (*Id.*) The absence of scores on the interview sheets has no effect on the District's reason for not hiring Plaintiff.

Plaintiff also argues that Taulbee's criminal conviction is an indication that Plaintiff was the superior candidate. Mr. Taulbee's criminal background report indicates that he was convicted in 1992 for passing a bad check and that the information was received by the District on January 25, 2011 – after his hire. (Doc. 12, Ex. K). In fact, Wilson had not seen the report prior to her deposition. (*Id.* at 53, Ex. K). At some point after the December 15, 2010 interview, Ed Sweetnich contacted Wilson and told her that something came up on Taulbee's background check. (*Id.* at 54). Sweetnich explained that the issue did not preclude Taulbee from working for the District. (*Id*.) Rayford was also unaware of the conviction at the time of Taulbee's interview and learned of it only after Taulbee was employed by the District. (Doc. 13 at 14). Accordingly, the evidence

16

shows that the District lacked any knowledge of Taulbee's criminal background at the time of his interview and hire.

Plaintiff further complained to the OCRC about discrepancies in interview notes he received, where information was allegedly whited out by an unknown source. Plaintiff maintained that these markings evidenced discrimination.[8]  However, when Plaintiff was presented with the documents at his deposition, he agreed that nothing present or omitted from his interview notes gave an advantage or disadvantage to Messrs. Taulbee or Barnes or otherwise was a disadvantage to him as a result of his age.  (Doc. 16 at 25, 27).  In fact, Plaintiff agreed that the noted failed to indicate age bias against him at all.  (*Id*. at 27).

Plaintiff has failed to present any evidence that age was a consideration in the District's decision.[9]  Indeed, Plaintiff admitted in his deposition that the questions presented to him were age-neutral and job-related and that nothing in his interview notes demonstrates otherwise.  (Doc. 16 at 25-28).  Moreover, "it is inappropriate for the judiciary to substitute its judgment for that of management."  *Hedrick*, 355 F.3d at 462. Courts should not serve as "super personnel departments" second-guessing the decisions of management.  *Id.*  Instead, this Court's inquiry is "limited to whether the employer gave an honest explanation of its behavior.'"  *Id.* (quoting *Harvey v. Anheuser-Busch,*

---

[8] Much of the Plaintiff's purported evidence of discriminatory treatment is based on his own subjective beliefs and speculation.  However, speculation ungrounded in fact is insufficient to establish pretext.  *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).

[9] A request for an applicant's birthdate or age is not, in itself, a violation of the ADEA.  29 C.F.R. §§ 1625.4 and 1625.5

17

*Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)).  This Court finds that Defendant's selection of Dwight Taulbee and Brett Barnes for the carpenter positions based on what occurred in the candidates' interviews is an honest explanation supported by the record.

Therefore, construing all facts in favor of Plaintiff, he fails as a matter of law to state a claim for age discrimination.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment (Doc. 10) is **GRANTED**.

**IT IS SO ORDERED**.

Date:  11/12/13                                                      *s/ Timothy S. Black*
                                                                    Timothy S. Black
                                                                    United States District Judge